ORIGINAL

# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS

**FILED JUN 2 4 2016 U.S. COURT OF FEDERAL CLAIMS**

* * * * * * * * * * * * * * * * * * * *
JULIE REILING,                        *
                                      *  No. 15-032V
            Petitioner,               *  Special Master Christian J. Moran
     v.                               *
                                      *  Filed: June 24, 2016
SECRETARY OF HEALTH                   *
AND HUMAN SERVICES,                   *  Attorneys' fees on interim basis;
                                      *  reasonable basis
            Respondent.               *
* * * * * * * * * * * * * * * * * * * *

Andrew D. Downing, Van Cott & Talamante, PLLC, Phoenix, AZ, former counsel for petitioner;
Ann D. Martin, United States Dep't of Justice, Washington, DC, for respondent.

## PUBLISHED DECISION DENYING ATTORNEYS' FEES AND COSTS ON AN INTERIM BASIS[1]

Julie Reiling alleges that a tetanus-diphtheria-acellular pertussis ("Tdap") vaccination she received on June 14, 2013, harmed her. While her case remains pending, Ms. Reiling has filed a motion for an award of attorneys' fees and costs on an interim basis. Pet'r's Fee Appl'n, filed April 25, 2015. This application prompted an opposition from the Secretary and was, in turn, supported by a brief Ms. Reiling's former attorney filed. For the reasons explained below, Ms. Reiling

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

has not demonstrated that an award of attorneys' fees and costs is warranted at this time. Therefore, her request is DENIED.

## I. Brief Factual and Procedural History

Many years before the Tdap vaccination at issue in this case, Ms. Reiling complained about wheezing, joint pain, and eye itching while at work. Apparently, someone at her place of employment (a major home renovation store) informed her that she was allergic to latex. The doctor to whom she made these complaints in 2005 (Dr. Barry) referred her to another doctor. Exhibit 12 at 13. The second doctor, who appears to have a specialty in occupational medicine, stated that "many of her symptoms are not consistent with allergic exposure and should be worked up with her primary care doctor for possible other causes." Exhibit 19 at 7.

Upon returning to Dr. Barry, Ms. Reiling told her that the previous doctor had not listened to her properly. Ms. Reiling requested that Dr. Barry provide her with "a note for work to change her work environment to decrease exposures." Exhibit 12 at 16. After an examination, Dr. Barry stated that Ms. Reiling had an upper respiratory infection and asthma symptoms "possibl[y] secondary to work exposure to allergens." Id. at 17.

A few months later, Ms. Reiling told Dr. Barry that after a "liver cleanse" and "oxygen therapy" with her chiropractor (whose records are not contained in the record), her joint pain and respiratory issues had nearly resolved. Ms. Reiling, however, complained of other problems with other chemicals, such as feeling sick when exposed to fumes when driving behind a bus. Dr. Barry's examination did not reveal any abnormalities. Exhibit 12 at 55.

Approximately three years later in October 2008, Ms. Reiling saw another primary care physician, Robin Fischer. Ms. Reiling complained about "burning in her head." According to Dr. Fischer, Ms. Reiling "relates a lot of this to the metal filling that she has in her mouth." Ms. Reiling told Dr. Fischer that a nonconventional dentist had removed cadmium from her teeth. After this removal, Ms. Reiling felt strange sensations when near a cell tower less frequently. Dr. Fischer assessed Ms. Reiling with "headache pain, possibly tension headache." Exhibit 11 at 27. Dr. Fischer suggested that a psychiatrist might be useful. Id.

More proximate to the Tdap vaccination at issue here, on June 14, 2013, Ms. Reiling sought treatment at Fairview Lakes Regional Medical Center. Ms. Reiling reported that about one month earlier, she hit her head on a stove. She told the

2

doctor that "her head hurts." She also had noticed metal shavings in her head. Upon examination, the doctor found a small red patch on her scalp. The doctor ordered the Tdap vaccination and prescribed an antibiotic. Exhibit 12 at 152.

In an affidavit, Ms. Reiling averred that after the vaccination, she had headache, nausea, and itchy eyes, among other problems. She stated that these problems started the evening of June 14, 2013, and continued into the next day at least. Exhibit 1, ¶ 5-6.

On July 2, 2013, Ms. Reiling returned to Fairview Lakes, reporting that she had been placed on antibiotics on June 14, 2013 and requested more antibiotics. Ms. Reiling informed a nurse that "her jaw has been hurting and that she has been getting sharp pains in her head." Exhibit 12 at 156. Ms. Reiling had noticed "yellow stuff oozing from the cut" in her head. Id. Although the nurse urged Ms. Reiling to stay, Ms. Reiling wanted only to schedule an appointment for the next day.

The next day, Ms. Reiling came to her appointment. Ms. Reiling stated she had a "dull ache constant[ly]" and "sharp pains intermittently." She also reported that two days after taking the antibiotic, she had a "stiff jaw." Ms. Reiling's history also included a statement that "she has some pain [but] no headaches." She also indicated that she has "not had any other symptoms." Exhibit 12 at 158-59. The doctor's examination showed that Ms. Reiling's scalp had a "well healed scar no scab." Neurologically, the doctor assessed Ms. Reiling as having "Normal strength and tone," intact mentation and normal speech. Id. The doctor assessed Ms. Reiling as having a "head injury" that "may take a while to completely resolve." The doctor also recommended following up with a dentist for a tooth infection. Id.

Following the July 3, 2013 consultation, Ms. Reiling visited multiple doctors, reporting multiple medical problems. See Resp't's Rep., filed Oct. 9, 2015, at 7-18; Reply in Support of Mot. for Attorneys' Fees, submitted May 31, 2016, at 2-4. These records are generally not relevant to determine whether Ms. Reiling should be awarded attorneys' fees and costs at this time.

In July 2014, Ms. Reiling contacted attorney Drew Downing. Timesheets at 1. Mr. Downing gathered some medical records and then submitted Ms. Reiling's petition on January 12, 2015. He filed the medical records about six weeks later.

The petition alleges that Ms. Reiling's pre-existing latex allergy prompted an adverse reaction to latex found in "tip caps of prefilled syringes" used to

3

administer the vaccine. Pet. at 1. However, as discussed in the Secretary's Report, allergy testing did not show Ms. Reiling had any allergy to latex. This testing was conducted in August 2014. Exhibit 2 at 22-23.

The inconsistency between the petition and the petitioner's affidavit, which alleged an allergy to latex, and the medical record, which showed no allergy to latex, was discussed in the initial status conference. Mr. Downing planned to obtain an expert report. Order, issued Oct. 19, 2015.

On March 29, 2015, the petitioner filed a report from Patrick Nemechek. Exhibit 27. He is a doctor of osteopathic medicine who graduated from medical school in 1987. Exhibit 28 (curriculum vitae) at 3. Through approximately 2010, Dr. Nemechek focused on treating patients with HIV. Exhibit 27 at 1, exhibit 28. His curriculum vitae lists many publications in the context of HIV and/or AIDS. Exhibit 28.

Dr. Nemechek's curriculum vitae indicates that after 2010, he worked as a medical director of a weight loss center. He also is the medical director of Nemechek Consultative Medicine. Exhibit 28 at 1. Although his curriculum vitae does not describe the nature of this practice, Dr. Nemechek provided additional information about his background in his expert report. There, Dr. Nemechek stated that his practice "has centered on the diagnosis and treatment of autonomic-related disorders such as traumatic brain injury and concussion, POTS, chronic fatigue, migraine headaches, orthostasis, poor memory and concentration, and irritable bowel syndrome." Exhibit 27 at 1.

Dr. Nemechek's report is approximately three pages. The first page is his background. The second page is a summary of Ms. Reiling's medical history. This history begins about six months before vaccination. The third page contains Dr. Nemechek's opinion, which carries over onto a fourth page. Exhibit 27.

Although the petition alleges the Tdap vaccination exposed Ms. Reiling to latex, Dr. Nemechek does not include the latex allergy in his report. Instead, his theory is that striking the stove caused Ms. Reiling a traumatic brain injury. For evidence of a traumatic brain injury, Dr. Nemechek relies on a report of "four weeks of persistent headache after a head injury." Exhibit 27 at 2-3. This traumatic brain injury made Ms. Reiling vulnerable to other stressors. According to Dr. Nemechek, the Tdap vaccination worsened the traumatic brain injury by prompting systemic inflammation. Exhibit 27 at 3.

4

Following the submission of Dr. Nemechek's report and associated literature, Mr. Downing filed a motion to withdraw as counsel. In the ensuing status conference, Mr. Downing confirmed his client's receipt of the motion. Mr. Downing also announced his intention to file a motion for an award of attorneys' fees and costs on an interim basis. Dr. Nemechek's report was not discussed in the April 25, 2016 status conference.

On May 11, 2016, the Secretary responded to the fee application. The Secretary objected, arguing that Ms. Reiling's petition was not supported by reasonable basis. The Secretary also contended that Ms. Reiling's case did not satisfy any factors that could justify an award on an interim basis under Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343 (Fed. Cir. 2008). Pursuant to Vaccine Rule 19 and 20, a reply was due on May 23, 2016.

Ms. Reiling, still represented by Mr. Downing, did not file a reply within this time. After the deadline passed, the motion for Mr. Downing to withdraw was granted. Ms. Reiling now represents herself.[2]

Although Mr. Downing is not counsel of record, he submitted a motion for leave to file a reply brief out-of-time. This motion was granted. On June 8, 2016, Mr. Downing submitted a supplemental application for attorneys' fees and costs. With the submission of the reply, the motion is ready for adjudication.

## II. Analysis

Broadly speaking, resolving a motion for an award of attorneys' fees and costs on an interim basis requires consideration of three issues. The first is whether the petitioner is eligible for attorneys' fees and costs. If the petitioner is eligible, then the second issue is whether the petitioner should receive any attorneys' fees and costs at this time. The third question is, assuming that some award is appropriate, what constitutes a reasonable amount in this case. See Rehn v. Sec'y of Health & Human Servs., 126 Fed. Cl. 86, 91 (2016). For Ms. Reiling, because the resolution of the first question is dispositive, the second and third questions are not reached.

---

[2] Ms. Reiling is responsible for filing a status report about her plan to proceed by July 24, 2016. Order, issued May 25, 2016.

5

## Whether the Petitioner's Case Satisfies the Requirements for an Award of Attorneys' Fees and Costs

Petitioners who have not yet been awarded compensation may be entitled to an award of attorneys' fees and costs when "the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa—15(e)(1). Petitioners establish reasonable basis by submitting evidence. This evidence need not preponderate but the evidence must support the claim set forth in the petition. Chuisano v. Sec'y of Health & Human Servs., 116 Fed. Cl. 276, 289 (2014).

Here, Ms. Reiling has two theories: latex allergy and traumatic brain injury. The latex allergy theory is not reasonable. Testing for allergy to latex was negative on August 26, 2014. Exhibit 2 at 23. This test was conducted about one month after Ms. Reiling retained Mr. Downing and about five months before Mr. Downing filed a petition. Although some records reflect that Ms. Reiling said she had an allergy to latex, her counsel was on notice that doctors considered her to be a "very difficult historian." Exhibit 13 at 25.

The second theory is evidenced by Dr. Nemechek's opinion that the Tdap vaccine exacerbated an underlying traumatic brain injury. There are numerous questions about this theory.

First, Dr. Nemechek's diagnosis of traumatic brain injury is not in accord with the assessment of medical personnel who saw Ms. Reiling during the relevant time. Within two months of when Dr. Nemechek asserted that Ms. Reiling started suffering a traumatic brain injury, medical personnel saw Ms. Reiling three times: on June 14, 2013, when a doctor treated her for hitting her head on the stove; on July 2, 2013, when Ms. Reiling saw a nurse to schedule an appointment the next day; and on July 3, 2013, when a doctor saw Ms. Reiling. None diagnosed traumatic brain injury. The lack of diagnosis suggests ---- but does not prove --- that she was not suffering a traumatic brain injury.[3]

Second, even if the lack of diagnosis from the treating doctors were ignored, there are additional questions about the basis for Dr. Nemechek's opinion that Ms. Reiling suffered a traumatic brain injury. Dr. Nemechek grounds his opinion that

---

[3] Conceivably, the symptoms of traumatic brain injury could be subtle and easily missed. However, the case contains no evidence that doctors and nurses would fail to recognize traumatic brain injury.

Ms. Reiling had a traumatic brain injury on an assertion that she had headaches for four weeks after striking her head against a stove. Exhibit 27 at 2-3. However, Ms. Reiling averred, contradictorily, that before the June 14, 2013 vaccination, "I had not experienced any of my current symptomology." Exhibit 1 at ¶ 2. Rather, in Ms. Reiling's account, the headaches started on the evening of June 14, 2013. She also lists other symptoms, such as "a sore arm, itchy eyes, nausea . . . [and] rapid heartbeat." Id. at ¶ 5. Dr. Nemechek's report includes these symptoms, except for headaches, and does not explain why he included some (but not all) of Ms. Reiling's symptoms. Dr. Nemechek may have a persuasive methodology but he has not articulated a principle that guides how he evaluates affidavits.

Dr. Nemechek's theory is also premised on the continued existence of a traumatic brain injury that the Tdap vaccine worsened. However, when Ms. Reiling saw a doctor on July 3, 2013, she reported "no headaches." Exhibit 12 at 158-59. The affirmative statement "no headaches," seems inconsistent with a continuation of a traumatic brain injury, which Dr. Nemechek diagnosed on the basis of headaches. Dr. Nemechek might be able to explain why an apparent inconsistency is not an actual inconsistency, but he has not done so. Actually, Dr. Nemechek has not discussed the July 3, 2013 record at all, leaving a gap in his opinion.[4]

All these points lead to questions about Dr. Nemechek's assertion that Ms. Reiling suffered a traumatic brain injury. There may be reasonable answers to these questions, but the record does not contain them. Special masters should not base decisions regarding reasonable basis on hopes about what the evidence may eventually show. Chuisano v. Sec'y of Health & Human Servs., No. 07-452V, 2013 WL 6234660 (Fed. Cl. Spec. Mstr. Oct. 25, 2013), mot. for rev. denied, 116 Fed. Cl. 276, 291 (2014).

Even if there were a reasonable basis for the opinion that Ms. Reiling suffered a traumatic brain injury, Dr. Nemechek's report remains incomplete. His theory is that the Tdap vaccination "worsen[ed] her underlying traumatic brain injury." Exhibit 27 at 3. A significant aggravation case should include some discussion about the expected course of the underlying disease but for the vaccination. Locane v. Sec'y of Health & Human Servs., 685 F.3d 1375, 1381

---

[4] Similarly, Mr. Downing's reply brief omits any discussion of the July 3, 2013 medical record.

7

(Fed. Cir. 2013); Loving v. Sec'y of Health & Human Servs., 86 Fed. Cl. 134, 144 (2009) (placing burden on respondent after petitioners "successfully put forward such a prima facie case"); Gruber v. Sec'y of Health & Human Servs., 61 Fed. Cl. 674, 684 (2004) (discussing significant aggravation in the context of an on-Table claim). Dr. Nemechek has not explained how the stove-induced traumatic brain injury would have progressed. This is another gap in Dr. Nemechek's report.

Finally, the theories that vaccines contribute to traumatic brain injuries appears novel. Ms. Reiling has cited no comparable cases and independent research has not uncovered any. The unprecedented nature of the theory is another reason for pausing before finding reasonable basis. The theory may have a reasonable basis --- and could even be persuasive --- but Dr. Nemechek needs to expand his presentation.

In the only Federal Circuit case to discuss reasonable basis in the Vaccine Program, the Federal Circuit stated: "Congress must not have intended that every claimant, whether being compensated or not under the Vaccine Act, collect attorney fees and costs by merely having an expert state an unsupported opinion that the vaccine was the cause in-fact of the injury." Perreira v. Sec'y of Health & Human Servs., 33 F.3d 1375, 1377 (Fed. Cir. 1994). On the present record, Ms. Reiling fits within the restriction on reasonable basis as described by the Federal Circuit.

Ms. Reiling may use this decision as an outline for seeking additional information. See Vaccine Rule 5 (permitting the special master to evaluate the parties' positions). Additional information may contribute to a finding of reasonable basis and could support a ruling in Ms. Reiling's favor. After Ms. Reiling submits more information, it may be appropriate to reconsider the request for attorneys' fees and costs on an interim basis.[5]

---

[5] Because of the finding that reasonable basis does not support Ms. Reiling's petition, questions concerning the appropriateness of an interim award and the reasonableness of the amount requested are not resolved.

## Conclusion

Ms. Reiling has not yet established the reasonable basis for her petition. Therefore, her April 25, 2015 motion for an award of attorneys' fees and costs on interim basis is DENIED.

IT IS SO ORDERED.

Christian J. Moran
Special Master